IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| RAYMOND L. ZISUMBO,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>OGDEN REGIONAL MEDICAL CENTER,<br><br>Defendant. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br><br><br>Case No. 1:10-CV-73 TS |

This matter is before the Court on Defendant Ogden Regional Medical Center's ("Ogden Regional") Motion for Judgment as a Matter of Law, Plaintiff Raymond Zisumbo's ("Zisumbo") Motion to Strike, and Plaintiff's post-trial Motion for Equitable Relief.  For the reasons discussed below, the Court will deny both Defendant's Motion for Judgment as a Matter of Law and Plaintiff's Motion to Strike, but will grant in part and deny in part Plaintiff's Motion for Equitable Relief.

## I.  BACKGROUND

Zisumbo is a Hispanic man who worked as a computer tomography ("CT") technician at Ogden Regional from April 2005 until October 8, 2009.  On August 3, 2009, in order to curb office gossip that Zisumbo had been fired from previous jobs he had held, Zisumbo submitted to

his supervisor employment verification letters from St. Mark's Hospital and the University of

Utah.  Ogden Regional alleges that Zisumbo submitted an additional employment verification

letter from McKay-Dee Hospital at the same time.  Ogden Regional alleges that the St. Mark's

letter and the McKay-Dee letter were both fraudulent.

On September 18, 2009, Zisumbo filed an initial complaint with the Utah Labor

Commission alleging Ogden Regional had discriminated against him based on his race.  On

October 8, 2009, Zisumbo's supervisor Mr. Rodebush ("Rodebush") brought the letters to the

attention of the Director of Human Resources at Ogden Regional, Christine Bissenden

("Bissenden").  Bissenden terminated Zisumbo's employment, purportedly because one or more

of the letters Zisumbo provided was fraudulent.

Zisumbo filed a lawsuit alleging discrimination and retaliation under Title VII.  On

August 2, 2013, a jury found in favor of Zisumbo on his unlawful retaliation claim and against

Zisumbo on his race discrimination claim.  Defendant moves for judgment as a matter of law.

Plaintiff moves to strike Defendant's Rule 50(a) Motion and seeks equitable relief.

## II.  STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure provides,

(1) If a party has been fully heard on an issue during a jury trial and the court finds
that a reasonable jury would not have a legally sufficient evidentiary basis to find
for the party on that issue, the court may:
(A) resolve the issue against the party; and
(B) grant a motion for judgment as a matter of law against the party on a claim or
defense that, under the controlling law, can be maintained or defeated only with a
favorable finding on that issue.[1]

---

[1] Fed. R. Civ. P. 50(a).

In reviewing a Rule 50 Motion, the Court should review all of the evidence in the record.[2] However, all reasonable inferences are drawn in favor of the nonmoving party and the Court does "not make credibility determinations or weigh the evidence."[3]  Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[4]  A judgment as a matter of law is appropriate "[i]f there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."[5]

## III. DISCUSSION

A.      MOTION TO STRIKE

During trial, Ogden Regional filed a Motion for Judgment as a Matter of Law.  Counsel for Zisumbo was directed to respond, but failed to do so.  The Court did not rule on Ogden Regional's Motion.  After trial, Ogden Regional submitted a request that the Court rule on its Motion.  In response to Ogden Regional's request, Zisumbo filed a Motion to Strike, arguing that because Defendant moved the court pursuant to Rule 50(a) during trial, and because the Court did not rule on Ogden Regional's Motion and the action was submitted to the jury, Defendant cannot now renew its Rule 50(a) Motion.

---

[2]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[3]*Id.*

[4]*Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

[5]*Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999).

Rule 50 expressly contemplates that a court may reserve its decision on the legal issues presented by a Rule 50(a) motion until after a jury has reached a verdict.[6]  For this reason, the Court will deny Plaintiff's Motion to Strike.  Even so, the Court will deny Ogden Regional's Motion for the reasons set forth below.

A.    JUDGMENT AS A MATTER OF LAW

At the close of Zisumbo's case, Ogden Regional moved for judgment as a matter of law, arguing that the evidence submitted was not sufficient to show that (1) Zisumbo was denied a promotion to the CT Coordinator position because of his race, (2) he was issued a written warning in retaliation for making a complaint of discrimination, and (3) his termination of employment was based on discrimination or retaliation.  Subsequent to the filing of the instant Motion, Plaintiff agreed to proceed only on his discrimination and retaliation claims arising out of his termination.[7]  The Court will therefore consider the Motion for Judgment as a Matter of Law only as it relates to Plaintiff's claims based on his termination.

   1.    Discrimination

Zisumbo claims that Ogden Regional discriminated against him because of his race when it terminated his employment.  Zisumbo must prove that Ogden Regional intentionally discriminated against him.[8]  The jury may, but is not required to, infer that Defendant

_____

[6]Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal issues raised by the motion.").

[7]Docket No. 156, at 17.

[8]*Adamson v. Multi Cmty. Diversified Servs. Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) ("Plaintiff has the ultimate burden of proving, either directly or indirectly, that defendant

intentionally discriminated against Plaintiff if Plaintiff shows that Defendant's proffered nondiscriminatory reasons for its decisions are pretextual.[9]  Zisumbo need only prove that race was a motivating factor in Defendant's decisions.[10]

Plaintiff did not provide any direct evidence that Defendant's decision to terminate him was based on his race.  Defendant stated that Plaintiff was terminated for providing a fraudulent letter from St. Mark's.  Defendant also presented evidence that Plaintiff provided Ogden Regional a fraudulent letter from McKay-Dee, though Ogden Regional did not make the determination that the McKay-Dee letter was fraudulent until after Ogden Regional terminated Zisumbo's employment.

Viewing the evidence in the light most favorable to Plaintiff, as the Court must, the Court concludes that Plaintiff provided evidence from which a jury could find that Defendant's stated reasons for terminating Plaintiff were pretextual.  Specifically, Plaintiff presented evidence that he did not create the documents that were provided to Ogden Regional.  Plaintiff presented the testimony of Plaintiff's wife, Melany Zisumbo ("Mrs. Zisumbo") wherein she explained that she obtained the St. Mark's letter directly from the hospital.  Mrs. Zisumbo further testified that the

---

intentionally discriminated against him.").

[9]*Id.* at 1144–45 ("While we agree a trier of fact may infer discriminatory intent from facts that also support a finding of pretext, we reject the reverse assertion that evidence of 'pretext,' i.e. that an employer's stated reasons for employment decisions are inaccurate or untrue, compels it.").

[10]*See id.* at 1146 ("The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory factor was the 'sole' motivating factor in the employment decision.  Instead, the employee must show that the unlawful intent was a 'determining factor' and that the decision violates the statute.") (citations omitted).

documents were prepared by an employee of St. Mark's that does not normally prepare this type of letter, and was only willing to prepare it under pressure.  Mrs. Zisumbo further testified that she called Rodebush, Zisumbo's supervisor, immediately after Plaintiff's termination to explain the origin of the documents.  Finally, Plaintiff testified that he did not provide the McKay-Dee letter to Defendant.

Additionally, Plaintiff testified that he was a highly skilled technician, perhaps the best employed at Ogden Regional.  Plaintiff provided evidence that he received positive performance reviews and was highly rated by his previous supervisors.

A reasonable jury could conclude that Plaintiff did not provide fraudulent letters to Defendant and that Defendant did not adequately investigate the origin of the documents.  From this evidence, a reasonable jury could determine that Defendant was looking for a way to terminate Plaintiff and that Defendant's stated reasons for terminating Plaintiff are pretextual.  As a reasonable jury could conclude that Defendant's stated reasons are pretextual, they could infer that the true reason Plaintiff was terminated was based on his race.

*2.    Retaliation*

Zisumbo also alleged that Defendant intentionally retaliated against him for opposing a practice made unlawful by Title VII.  To establish a claim of retaliation, Zisumbo must show by a preponderance of the evidence that (1) he engaged in protected activity in opposition to discrimination, (2) Ogden Regional took an employment action against him that a reasonable

employee would have considered materially adverse, and (3) there was a causal connection between his protected opposition and any materially adverse actions.[11]

    *a.    Protected Activities*

Protected activities include making a charge of discrimination, harassment or retaliation, or testifying, assisting or otherwise participating in any manner in one's own charge of discrimination or harassment, investigation, proceeding or hearing under Title VII.[12]

Plaintiff presented evidence that he filed a complaint with the Utah Labor Commission. Plaintiff also presented evidence that he filed a complaint with Ogden Regional's ethics line. Although the written record of the ethics line complaint does not include any allegations of discrimination, Plaintiff testified that he alleged racial discrimination when he called the ethics line.  Furthermore, Plaintiff testified that, after a company pizza party, he accused Rodebush of discriminating against him based on race, and that he was told not to play the "race card." Additionally, Plaintiff testified that he called the ethics line shortly after he accused Rodebush of racial discrimination, after Rodebush told him to call the ethics line if thought he was being discriminated against because of his race.  Plaintiff testified that he specifically alleged he was being racially discriminated against when he made his ethics line complaint.  Finally, Plaintiff testified that, in an interview with Rodebush, Plaintiff was questioned about having made a complaint of racial discrimination

---

[11]*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).

[12]42 U.S.C. § 2000e-3 (2012).

From this evidence, a reasonable jury could conclude that Plaintiff engaged in protected activities in opposition to discrimination.

  b. *Materially Adverse Actions*

An employment action is considered materially adverse if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[13]

In this case, Mr. Zisumbo claims that Ogden Regional took an adverse employment action against him when Ogden Regional terminated his employment.

A reasonable jury could conclude that termination would be likely to dissuade a reasonable worker from making a complaint of discrimination.

  c. *Causal Connection*

Finally, Zisumbo must show that there was a causal connection between his protected activity and any materially adverse actions taken by Ogden Regional. To do so, Zisumbo must prove by a preponderance of the evidence that Ogden Regional would not have taken the challenged employment decision but for his protected activity.[14] This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of Ogden Regional.[15] The jury may infer that Defendant intentionally retaliated against

---

[13]*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

[14]*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

[15]*Id.*

Plaintiff if Plaintiff shows that Defendant's proffered nondiscriminatory reasons for its decisions are pretextual.[16]

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that Plaintiff would not have been terminated but for his complaints of discrimination.

As discussed earlier, Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Defendant's stated reasons for terminating Plaintiff were pretextual. Thus, the jury could infer that the real reason Plaintiff was fired was because he had complained about discrimination. In addition, Zisumbo testified that shortly before he was fired, he spoke with Rodebush and another employee about the fact that Zisumbo had filed complaints of racial discrimination. The timing of these events could lead a reasonable jury to conclude that Plaintiff would not have been terminated but for his complaints about discrimination.

Viewing the facts presented at trial in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find in favor of Plaintiff on both his discrimination and retaliation claims. Therefore, the Court denies Defendant's Rule 50 Motion.

C.   MOTION FOR EQUITABLE RELIEF

Zisumbo seeks equitable relief in the form of back pay and reinstatement, or in the alternative, back pay and front pay. Ogden Regional argues that the after-acquired evidence doctrine bars all equitable relief. Alternately, Ogden Regional contends that evidence of post-

---

[16]*Reynolds v. Sch. Dist. No. 1, Denver Colo.*, 69 F.3d 1523, 1533 (10th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973)).

termination misconduct makes Zisumbo ineligible for rehire, and therefore limits his claim for back pay and precludes his claim for front pay/reinstatement.

"[C]onsiderable discretion is vested in the district court when devising remedies for Title VII violations."[17]   However, the Court's "exercise of discretion in awarding back pay must be 'measured against the purposes which inform Title VII.'"[18]   These purposes include fashioning a remedy that "both provides an incentive to employers to avoid discriminatory practices, and makes persons whole for injuries suffered on account of unlawful employment discrimination."[19]   Typically, "[t]he relevant time period for calculating an award of back pay begins with wrongful termination and ends at the time of trial."[20]   If a district court declines to award back pay, "it must carefully articulate its reasons, so as to enable the court of appeals to test them against the purposes of Title VII."[21]   Finally, "[u]nder Title VII, prejudgment interest is an element of complete compensation in back pay awards."[22]

Front pay is an equitable remedy and the district court has discretion to decide whether such an award is appropriate.[23]   "Front pay is simply money awarded for lost compensation

---

[17] *Estate of Pitre v. W. Elec. Co., Inc.*, 975 F.2d 700, 704 (10th Cir. 1992).

[18] *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18 (1975)).

[19] *Id.* (citation and internal quotation marks omitted).

[20] *Wulf v. Wichita*, 883 F.2d 842, 871 (10th Cir. 2009).

[21] *Pitre*, 975 F.2d at 706 (citations omitted).

[22] *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006).

[23] *Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005).

during the period between judgment and reinstatement or in lieu of reinstatement."[24]   Although

reinstatement is the preferred remedy under Title VII, reinstatement may not be practical when "a

productive and amicable working relationship would be impossible."[25]   The amount of front pay

is "set in the court's discretion."[26]   In calculating front pay, the court will look to several factors

including work life expectancy, salary and benefits at the time of termination, and possible salary

increases.[27]

> 1.      *After-Acquired Evidence*

Ogden Regional contends that Zisumbo's pre-termination misconduct bars front pay or

reinstatement and limits back pay to the period of time between Zisumbo's termination and the

date of the after-acquired evidence.

After-acquired evidence is "evidence of wrongdoing that would have led to termination

on legitimate grounds had the employer known about it."[28]   Once an employer establishes that

after-acquired evidence would have justified termination of employment, a plaintiff's claim for

back pay is limited "from the date of the unlawful discharge to the date the new information was

discovered."[29]   The United States Supreme Court determined in *McKennon v. Nashville Banner*

---

[24]*Abuan v. Level 3 Commc'n, Inc.*, 353 F.3d 1158, 1176 (10th Cir. 2003).

[25]*EEOC v. Prudential Fed. Savs. & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir. 1985).

[26]*Whittington*, 429 F.3d at 1000.

[27]*Id.* at 1000–01.

[28]*McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995).

[29]*Id.*

*Publishing Co.*, that when an employer uncovers evidence of a former employee's misconduct during the time of employment, that evidence, while not relieving the employer of liability for a wrongful termination, may be relevant to the issue of damages.[30]

In applying *McKennon,* the Tenth Circuit has established a two-step process.[31]  First, the employer must establish that the employee's wrongdoing was so severe the employee "would have been terminated on those grounds alone if the employer had known of the wrongdoing at the time of the discharge."[32]  Second, and only after establishing the first step, can the after-acquired evidence be considered to limit the damages remedy available to the wrongfully terminated employee.[33]

*McKennon* applies to wrongdoing that occurred pre-termination.  "When an employer has reason to know of the wrongful conduct prior to the date of termination, the alleged conduct cannot be utilized as after-acquired evidence."[34]  After-acquired evidence is "evidence of employee misconduct, such as criminal behavior, employer rule infractions, malpractice and the like, of which the employer became *aware* only *after* the employee's termination."[35]

---

[30]*Id.* at 354.

[31]*Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009).

[32]*Id.* (citing *McKennon*, 513 U.S. at 362–63).

[33]*Id.* (citing *McKennon*, 513 U.S. at 362).

[34]*McLaughlin v. Innovative Logistics Grp., Inc.*, No. 05-72305, 2007 WL 313531, at *12 (E.D. Mich. Jan. 30, 2007) (citing *Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 205 (3d Cir. 1996)).

[35]*Ahing v. Lehman Bros.*, No. 94-CV-9027, 2000 WL 460443, at *11 (S.D.N.Y. April 18, 2000) (emphasis in original) (citing *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 147 n.17

Ogden Regional first argues that Zisumbo's claim for back pay should be limited to the one day period between when Zisumbo was terminated—October 8, 2009—and the date Ogden Regional verified the McKay-Dee letter was fake—October 9, 2009.

There are several problems with this argument. First, Zisumbo admits he submitted letters from the University of Utah and St. Mark's but contends that he did not submit a letter from McKay-Dee. Second, evidence was presented at trial that Zisumbo was terminated because of both the St. Mark's and the McKay-Dee letters. Third, Ogden Regional claims it began to question the authenticity of the St. Mark's letter prior to Zisumbo's termination and therefore Bissenden attempted to verify the provenance of both letters. Bissenden proceeded to terminate Zisumbo before the entire investigation was complete. At the time Zisumbo was terminated, the McKay-Dee letter was in Ogden Regional's possession, Bissenden believed the letter looked odd, and she was in the process of attempting to authenticate it. Ultimately, because Ogden Regional was aware of the McKay-Dee letter on October 8, 2009, and had doubts about its authenticity on that date, the letter does not constitute after-acquired evidence.

Ogden Regional next argues that Zisumbo's claim for back pay should be limited to the same one day period because Ogden Regional acquired additional evidence concerning deception regarding the St. Mark's letter on October 9, 2009. Bissenden claims she was contacted by Zisumbo's attorney, who reportedly gave Bissenden inaccurate information about the authenticity of the St. Mark's letter. Bissenden then contacted human resources at St. Mark's and received information that Mrs. Zisumbo had contacted St. Mark's. Defendant argues that deception on the

_____

(2d Cir. 1999)).

part of both Mrs. Zisumbo and Zisumbo's attorney should be attributed to Zisumbo to limit his back pay.

There are several problems with this argument as well. First, there may be hearsay problems in considering this information for its truth, but even disregarding hearsay considerations, this new information cannot be used to limit back pay to Zisumbo. Second, the jury heard conflicting evidence at trial as to how the letter was obtained by Zisumbo. Third, this deception, if it is deception, cannot be attributed to Zisumbo. At best, this additional information shows deception on the part of Mrs. Zisumbo and/or Zisumbo's attorney. These additional details do not constitute after-acquired evidence sufficient to bar back pay for Zisumbo.

Finally, Ogden Regional argues that once it verified that both letters were fake, Ogden Regional would have been justified in terminating Zisumbo on October 9, 2009, because Zisumbo would have submitted two falsified letters. This argument fails for many of the same reasons listed above. Regardless, the jury heard evidence about both letters yet found Zisumbo's firing was unlawful retaliation. The after-acquired evidence doctrine applies to pre-termination misconduct that was discovered post-termination. The letters were discovered pre-termination therefore this doctrine does not preclude equitable relief for Zisumbo.

 2. *Failure to Mitigate*

On August 22, 2010, Zisumbo was arrested on a misdemeanor assault charge. On September 15, 2010, Zisumbo pleaded guilty to the charge. Defendant argues that Plaintiff's back pay award should be limited to the period of time between his termination and the date he

was arrested for assault because he failed to mitigate his damages when he obtained a criminal record for assault.

"Employees claiming entitlement to back pay and benefits are required to make reasonable efforts to mitigate damages."[36]  Otherwise, "amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."[37]  To satisfy its burden that a plaintiff failed to mitigate his damages, an employer must establish (1) that "there were suitable positions which the claimant[ ] could have discovered and for which [he was] qualified"[38] and (2) that the claimant "failed to use reasonable care and diligence in seeking such a position."[39]  Failure to mitigate can negate or reduce a claim for back pay or front pay.[40]

Defendant must first show that suitable positions were available to Zisumbo.  A position might not have been available to Zisumbo after September 2010 because at least some hospitals do not hire applicants for patient-care positions when the applicant has a recent criminal record.[41]  Although there were positions available to Zisumbo prior to September 2010, it appears Zisumbo used reasonable diligence in seeking such positions.  Evidence submitted in this case shows that

---

[36]*Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463 (10th Cir. 1993).

[37]42 U.S.C. § 2000e-5(g) (2006).

[38]*Aguinaga*, 993 F.2d at 1474.

[39]*Id.*

[40]*Dilley v. SuperValu, Inc.*, 296 F.3d 958, 967–68 (10th Cir. 2002).

[41]Docket No. 162 Ex. K, at 3 & Ex O, at 2.

15

since his termination at Ogden Regional, Zisumbo applied to more than twenty-five positions at Intermountain Health Care alone.[42]  Plaintiff's assault does not establish a failure to mitigate. However, the Court turns next to post-termination misconduct.

   3.     *Post-Termination Misconduct*

Defendant next argues that Zisumbo's assault conviction constitutes post-termination misconduct and makes him ineligible for rehire at Ogden Regional.  Defendant claims that Zisumbo's back pay should be limited to the period of time between his wrongful termination and his assault charge, and that he is precluded from being reinstatement or receiving front pay in lieu of reinstatement.

Ogden Regional's background check policy provides that a "[c]onviction of a felony or misdemeanor offense" may make a person ineligible for rehire.[43]  Further, to "ensure the safety of its patients, [Ogden Regional] does not hire job applicants for any patient-care position who have a criminal record for violent behavior."[44]

The Tenth Circuit in *Medlock v. Ortho Biotech, Inc.*,[45] addressed the issue of whether post-termination misconduct can serve to limit or bar equitable relief.  Although the court did not definitively hold that post-employment misconduct can limit equitable relief, the court held out

---

[42]Docket No. 162 Ex. O-A.

[43]Docket No. 162 Ex. K-1, at 9.

[44]*Id.* Ex. K, at 2.

[45]164 F.3d 545 (10th Cir. 1999).

the possibility.[46]  The court indicated that on proper facts not present in that case, post-termination misconduct could serve to limit front pay and reinstatement and possibly back pay.[47]

     In *Medlock*, an employee was allegedly terminated in retaliation for filing a claim of race-based discrimination.[48]  At his unemployment benefits compensation hearing, Medlock cursed at and verbally abused defendant's counsel.[49]  The defendant sought to limit front pay and reinstatement because of Medlock's conduct at the hearing, reasoning that he would have been fired for that conduct alone.[50]  The defendant argued that the district court erred by not instructing the jury that Medlock's post-termination conduct could serve to limit damages.[51]

     The Tenth Circuit reasoned that *McKennon* "states as a general rule that front pay and reinstatement are not appropriate remedies where there is after-acquired evidence of pre-termination wrongdoing"[52] but the court could "not foreclose the possibility that in appropriate circumstances the logic of *McKennon* may permit certain limitations on relief based on post-termination conduct."[53]  The court noted that "cases in which the alleged misconduct arises as a

---

[46]*Id.* at 555.

[47]*See id.*

[48]*Id.* at 548.

[49]*Id.* at 555.

[50]*Id.*

[51]*Id.* at 554.

[52]*Id.* at 555.

[53]*Id.*

direct result of retaliatory termination, the necessary balancing of the equities hardly mandates a *McKennon*-type instruction on after-occurring evidence."[54]   The court determined that the former employee's conduct at an unemployment benefits compensation hearing was directly related to the termination and declined to limit equitable relief in that case.

While the unemployment benefits hearing at issue in *Medlock* arose as a direct result of retaliatory termination, no such argument can be effectively made here.  The facts of this case appear to be the appropriate circumstance which the court in *Medlock* chose not to foreclose.  Zisumbo's assault arrest was unrelated to his termination from Ogden Regional.  Zisumbo's arrest involved an assault of his daughter and occurred more than ten months after he was terminated from Ogden Regional.  While Zisumbo has attempted to tie his criminal conviction to his termination, such a connection is too tenuous to be supported.  Because Zisumbo's misconduct is not a direct result of his termination, Zisumbo's post-termination misconduct limits the equitable relief available to him.

The Court finds the Eighth Circuit case of *Sellers v. Mineta*[55] instructive.  In *Sellers*, the court determined that post-termination conduct does not yield to a bright line rule because *McKennon* instructed lower courts to "treat each case on a case by case basis considering all the 'factual permutations and the equitable considerations they raise.'"[56]  In *Sellers*, a jury awarded damages to a woman who was terminated from employment with the Federal Aviation

---

[54]*Id.*

[55]358 F.3d 1058 (8th Cir. 2004).

[56]*Id.* at 1063 (quoting *McKennon*, 513 U.S. at 361).

Administration ("FAA") because of gender discrimination and retaliation for filing a sexual harassment complaint.[57]  She later went to work at Bank of America where she was fired for attempting to process an unauthorized loan application.[58]

The defendant argued that her post-termination conduct at Bank of America made her unsuitable for reinstatement with the FAA.[59]  The trial court awarded Sellers more than $600,000 in front pay.[60]  On appeal, the Eight Circuit vacated the award and remanded the case to the district court, determining that "post-termination misconduct of a type that renders an employee actually unable to be reinstated or ineligible for reinstatement should also be one of the factual permutations which is relevant in determining whether a front pay award is appropriate."[61]  In doing so, the court noted that "[i]t would be inequitable for a plaintiff to avail herself of the disfavored and exceptional remedy of front pay where her own misconduct precludes her from availing herself of the favored and more traditional remedy of reinstatement."[62]

The *Sellers* court determined that in order to establish that a plaintiff's claim to reinstatement or front pay be limited by post-termination conduct, "the defendant must convince the court by a preponderance of the evidence that [the plaintiff's] post-termination conduct

---

[57]*Id.* at 1059.

[58]*Id.* at 1060.

[59]*Id.*

[60]*Id.* at 1059.

[61]*Id.* at 1064.

[62]*Id.*

renders [him] ineligible for reinstatement under the [employer's] employment regulations, policies, and actual employment practices."[63]  In determining whether the employer has met this burden the court "must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals."[64]

Zisumbo is not eligible for rehire because Ogden Regional conducts background checks on all applicants.[65]  Ogden Regional receives its accreditation through the Joint Commission, which requires hospitals to ensure patient safety.[66]  Under Ogden Regional's written policy, applicants for rehire may be refused employment if they have a conviction of a felony or misdemeanor offense.[67]  Further, "the purpose of Ogden Regional's background check policy is to ensure the safety of its patients, [therefore] Ogden Regional does not hire job applicants for any patient-care position who have a criminal record for violent behavior."[68]

While the policy does not establish that current employees are subjected to ongoing background checks, evidence was introduced that when Ogden Regional becomes aware of a possible criminal violation, it follows up with an investigation, and would terminate a current

---

[63]*Id.* at 1065.

[64]*Id.* at 1064.

[65]Docket No. 162 Ex. K, at 2.

[66]*Id.*

[67]*Id.* Ex. K-1, at 9.

[68]*Id.* Ex. K, at 2.

employee based on a criminal record acquired after the employee was hired.[69]  According to both

the written policies and testimony about how the policies are implemented,[70] the Court finds

Zisumbo's criminal record for assault makes him ineligible for hire in a patient position at Ogden

Regional.

   *Sellers* barred only front pay and reinstatement, although *Medlock* itself lends support to

the premise that post-termination misconduct can limit back pay as well.[71]  The *Medlock* court

relied on a *UMKC Law Review* article[72] in refusing to foreclose the logic of *McKennon* in

appropriate post-termination misconduct cases.  That article concluded that "where post-

termination misconduct is egregious, such conduct should bar reinstatement and *curtail backpay*,

absent strong indications to the contrary."[73]  The Court finds that Zisumbo's conviction for

assault qualifies as egregious post-termination misconduct sufficient to curtail back pay and bar

reinstatement or front pay.

   While Defendant argues that Zisumbo's back pay should be cut off as of the date of his

arrest for assault, the Court finds that Ogden Regional's practice is to keep individuals with a

criminal record out of patient care positions.  The date Zisumbo pleaded guilty to assault is

---

[69]Docket No. 183, at 60–61.

[70]*Id.*

[71]*Medlock*, 164 F.3d at 555.

[72]Christine Neylon O'Brien, *The Law of After-Acquired Evidence in Employment Discrimination Cases: Clarification of the Employer's Burden, Remedial Guidance, and the Enigma of Post-Termination Misconduct*, 65 UMKC L. Rev. 159 (1996).

[73]*Id.* at 174 (emphasis added).

therefore the date to which back pay should be limited.  Back pay will be limited to the period of time between Zisumbo's termination (October 8, 2009) and his guilty plea for assault (September 15, 2010).

Plaintiff argues that Zisumbo's 2009 W-2 statement shows he earned $56,103.25 in 2009, and therefore asks the Court to determine Zisumbo's weekly wage from the W-2 numbers.  The Court declines to do so because the W-2 numbers may reflect a payout of all paid time off Zisumbo had accrued at the time of his termination.  The Court finds Zisumbo's hourly wage to be a better indicator of what he would have earned the last twelve weeks of 2009.

Zisumbo's daily rate of pay at the time of his termination was $26.46.  Using Zisumbo's hourly rate, Zisumbo is entitled to 2009 back pay in the amount of $15,801.06.  This reflects his hourly wage of $12,700.80 for the twelve weeks of 2009 after Zisumbo's termination, plus $466.75 in overtime wages, plus $2,633.51 in benefits.[74]  Based on Bissenden's testimony, the Court finds that on January 1, 2010, Zisumbo would have been eligible for a 2% salary increase.[75]  Zisumbo's back pay in 2010, from the start of the year until September 15, 2010, is $49,426.98.  This includes $39,729.28 in wages, plus $1,459.87 in overtime wages, plus $8,237.83 in benefits.  Accordingly, Zisumbo is entitled to the jury award of $7,500, back pay in the amount of $65,228.04, and 10% prejudgment interest.

---

[74]The parties agree that Zisumbo's back pay should include 20% of his salary as benefits.

[75]Zisumbo's hourly rate would have increased to $26.99 on January 1, 2010.

III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Judgment as a Matter of Law (Docket No. 150) is DENIED.  It is further

ORDERED that Plaintiff's Motion to Strike Defendant's Request to Submit for Decision on Defendant's Motion for Judgment as a Matter of Law (Docket No. 165) is DENIED.  It is further

ORDERED that Plaintiff's Motion for Equitable Relief of Back Pay and Reinstatement (Docket No. 159) is GRANTED IN PART AND DENIED IN PART.

The Clerk of the Court is directed to enter judgment in favor of Plaintiff in the amount of $72,728.04 plus prejudgment interest at 10%, and close this case forthwith.

DATED   November 22, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

23